UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TITLE, INC.,                                            Case No. 23-12725

      Plaintiff,                                     F. Kay Behm
v.                                                      United States District Judge

U.S. BANCORP, a/k/a U.S. BANK, N.A.,

      Defendant.
_____ /

**OPINION AND ORDER GRANTING
<u>MOTION TO DISMISS (ECF No. 12)</u>**

## I.   PROCEDURAL HISTORY

Plaintiff, Title, Inc., filed this action against U.S. Bancorp (U.S. Bank) on

October 26, 2023.  (ECF No. 1).  Title filed an amended complaint on February 19,

2024, alleging violations of the Michigan Uniform Commercial Code, Article 4A,

which applies to electronic funds transfers, and common law claims of negligence,

breach of contract, fraud and conversion, along with a claim of statutory

conversion.  (ECF No. 9).  U.S. Bank filed a motion to dismiss the amended

complaint in its entirety, arguing that Title fails to state a claim under Article 4A,

that its remaining claims are preempted by Article 4A, and that Title fails to state

a claim as to its common law and statutory conversation claims.  (ECF No. 12).

This matter is fully briefed.  (ECF Nos. 13, 16).  The court held a hearing, via

videoconference, on August 7, 2024.  (ECF No. 17).  For the reasons set forth

below, the court **GRANTS** U.S. Bancorp's motion to dismiss the amended

complaint.

## II.   FACTUAL BACKGROUND

Title is a title insurance agency that provides various services to consumers

in connection with real estate transactions.  (ECF No. 9, ¶ 8).  In November 2022

Title was handling a refinance transaction on behalf of its clients, Jeffrey S. Carter

and Karyn Carter, for a property in Utica, Michigan.  *Id*. at ¶ 11.  At the time, the

Carters had mortgaged the Utica property to non-party Mortgage 1 to secure

approximately $130,000 in debt, which was to be paid off as part of the

refinancing.  *Id*. at ¶¶ 12, 14.

On November 9, 2022, Mortgage 1's loan officer emailed Title payoff

instructions for the Carter transaction, directing it to make payment to a Chase

Bank account.  *Id*. at ¶ 13.  On November 14, 2022, Title received an email from

the email address of karyncarter@emailzag.com, purporting to be from its client

Karyn Carter, requesting a copy of the payoff instructions previously provided by

Mortgage 1.  *Id*. at ¶¶ 14-16.  "Karyn Carter" then responded that she had

discovered a mistake in the instructions, and Mortgage 1 would be sending Title

an updated payoff statement.  *Id*. at ¶ 17.  Title requested that the updated

payoff be faxed to it.  *Id*. at ¶ 18.  On the same date, Title received revised payoff instructions directing it to make payment of the same amount, but to a U.S. Bank account ending in 1184 instead of the initial Chase Bank account.  *Id*. at ¶¶ 19-20.

On November 18, 2022, Title directed its bank – BankUnited – to send a wire transfer to U.S. Bank in the amount of the payoff.  *Id*. at ¶ 22.  The wire instructions stated that Mortgage 1 was the beneficiary in connection with its loan.  *Id*. at ¶ 23.  On December 1, 2022, Title learned that the wire transfer to U.S. Bank was based on fraudulent payoff instructions and should have been sent to Chase Bank as indicated in the initial payoff statement.  *Id*. at ¶¶ 24-27.  Instead, the payoff amount was wired to the account of an individual.  *Id*. at ¶ 28.  Accordingly, Title had to pay off the loan for the borrowers.  *Id*. at ¶ 29.

Title alleges that, based on the revised payoff instructions and other facts and circumstances, U.S. Bank should have taken steps to refuse the wire transfer "when it was determined that the name on the account did not match the name of the beneficiary, Mortgage 1."  *Id*. at ¶ 30.

## III.   ANALYSIS

### A.   Standard of Review

In deciding a motion to dismiss under Rule 12(b)(6), the court "must construe the complaint in the light most favorable to the [nonmoving party] ...

[and] accept all well-pled factual allegations as true*." League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003).  The complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Moreover, the complaint must "contain[ ] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief, such as "when an affirmative defense ... appears on its face."  *Jones v. Bock*, 549 U.S. 199, 215 (2007) (quotation marks omitted).  A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[ ] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged."  *Id*. at 678. However, a claim does not have "facial plausibility" when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  *Id*. at 679.  The factual allegations "must do more than create speculation or

4

suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*, 500 F.3d at 527.  Showing entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

In evaluating the allegations in the complaint, the court must be mindful of its limited task when presented with a motion to dismiss under Rule 12(b)(6).  At the motion-to-dismiss stage, the court does not consider whether the factual allegations are probably true; instead a court must accept the factual allegations as true, even when skeptical.  *See Twombly*, 550 U.S. at 555 (a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"); *id*. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable"); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations").  Indeed, in assessing the sufficiency of a complaint, the court must determine only whether "'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged."  *See*

*United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D. Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

      B.   <u>Michigan Uniform Commercial Code Article 4A</u>

      As explained in *Harrington v. PNC Bank, N.A.*, 684 F.Supp.3d 631, 634 (E.D. Mich. 2023), when initiating a wire transfer, the originator provides the bank with a payment order containing at least: (1) the amount to be transferred, (2) the transferee's account number, and (3) the name associated with the transferee's account.  Banks must rely on the information in the authorized payment order to complete a wire transfer.  *Id*. (citing Mich. Comp. Laws § 440.4702).  When a payment order includes the account name and account number, banks have no duty to check if the account name and number match; they are free to rely on the account number alone to process the transfer.  *Id.* (citing § 440.4707(2)(a)).  If the bank elects to rely on an account number, it is only liable for loss if (1) the account number refers to a nonexistent or unidentifiable account; or (2) the bank possesses actual knowledge that the account number identifies one person while the name provided in the payment order identifies another (i.e., a "mismatch").  *Id*. at 634-635 (citing § 440.4707(1),(2)(b), § 440.1202 (defining "knows" as actual knowledge)).  Here, Title argues that it states a claim against U.S. Bank under Mich. Comp. Laws § 440.4707(2)(b).  Title's theory is that the wire transfer order

contained a mismatch between the name on the account and the name of the

beneficiary and U.S. Bank was not a person or party entitled to receive payment

from the originator of the funds transfer.  (ECF No. 13, PageID.263).

     *Harrington* is instructive.  In that case, the plaintiff was a car collector who

wanted to purchase a vehicle from the Car Gurus website for $215,000.  He

contacted his broker to effectuate the transaction.  After receiving

correspondence that he believed was from his broker, he authorized his bank to

transfer the funds from his account to a PNC account.  In that order, he provided

the name (Car Gurus) and the account number.  PNC completed the transaction.

*Harrington*, 684 F.Supp.3d at 633.  The plaintiff later discovered the fraud and

reported it to PNC.  However, most of the funds had already been withdrawn

from the PNC account at this point.  *Id*. at 634.  The plaintiff alleged that PNC

knew when it received the wire transfer that the 7748 account number did not

belong to Car Gurus and that it did not have an account under that name.  *Id*.

     The court rejected the plaintiff's theory that PNC did not have an account

open in the name of Car Gurus, the name he provided referred to a nonexistent

person in the PNC systems, and that PNC improperly completed the transaction.

*Id.* at 635.  The court concluded that under Michigan's UCC, PNC had no duty to

rely on or consider the account name in the payment order because it could solely

rely on the number as set forth in the statute. *Id.* (citing § 440.4707(2)(a)).

Because the account number referred to an existing an identifiable account, PNC

permissibly completed the transaction. *Id.* The court explained that when a bank

elects to rely only on the account number, the relevant question is only whether

the account number identifies a nonexistent or unidentifiable account. *Id.* (citing

§ 440.4707(1) (stating that the information provided cannot identify "a

nonexistent or unidentifiable person or account")).  Accordingly, because account

7748 was an existing and identifiable account, PNC's actions were proper under

the statute. *Id.* As set forth above, Title's response seems to clarify that it does

not bring a claim under § 440.4707(2)(a).  In any event, such a claim would not be

successful under the amended complaint because account 1184 was an existing

account and under § 440.4707(2)(a), U.S. Bank was entitled to rely on that

existing and identifiable account.

The *Harrington* court also rejected the plaintiff's theory under

§ 440.4707(2)(b) that PNC had actual knowledge of the mismatch because PNC

did not have an account in the name of Car Gurus for several reasons. *Id.* at 635.

First, the complaint failed to allege facts that PNC had actual knowledge of the

mismatch and instead contained a merely conclusory allegation unsupported by

any supporting facts.  Second, the court concluded that the theory also failed

because PNC was not required to consider the account name.  Third, to accept the

plaintiff's theory would hold PNC to a constructive knowledge standard, which is

contrary to the statutory requirement of actual knowledge.  *Id.*

Similarly, the amended complaint here does not allege that U.S. Bank had

actual knowledge of the mismatch.  Instead, it merely alleges that based on the

"Revised Payoff and the facts and circumstances outlined herein, US Bank should

have taken steps to refuse the wire transfer when it determined that the name on

the account did not match the name of the beneficiary, Mortgage 1."  (ECF No. 9,

¶ 30).  This does not sufficiently allege that U.S. Bank had actual knowledge of the

mismatch, and thus Title cannot proceed under § 440.4707(2)(b).  *See Imperium*

*Logistics v. Truist Fin. Corp.*, 686 F.Supp.3d 600, 604 (E.D. Mich. 2023) (If

knowledge is proven, the beneficiary bank bears the loss by returning the

originating settler and the originating bank to their pre-transfer positions, but

owes no duty under the UCC to the intended recipient of the funds.).  For these

reasons, Title's claim under Article 4A of the Michigan UCC (Count I) must be

dismissed.

C.    Title's Common Law Claims

U.S. Bank argues that the remainder of Title's claims are preempted by

Article 4A of the Michigan UCC and that they otherwise fail to state a claim.  *See*

*Wright v. Citizen's Bank of E. Tenn.*, 640 F. App'x 401, 406-07 (6th Cir. 2016)

("Article 4A displaces common-law claims relating to wire transfers if the claims

arise out of a situation addressed by Article 4A or attempt to create rights, duties,

or liabilities inconsistent with Article 4A.").  Article 4A is "intended to be the

exclusive means of determining the rights, duties and liabilities of the affected

parties in any situation covered by particular provisions of the Article.

Consequently, resort to principles of law or equity outside of Article 4A is not

appropriate to create rights, duties and liabilities inconsistent with those stated in

this Article."  Mich. Comp. Laws § 440.4602 and cmt.  In *Wright*, the court

explained that Article 4A's text "strongly suggests that it applies to claims

asserting the existence of authorized wire transfers, regardless of what the claims

may be called."  *Id*. at 406.

Title argues that not all claims are preempted by Article 4A and relies

primarily on *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267 (11th Cir. 2003),

in which the Eleventh Circuit held that:

> Article 4A is silent with regard to claims based on the
> theory that the beneficiary bank accepted funds when it
> knew or should have known that the funds were
> fraudulently obtained. Therefore, a provision of state
> law that requires a receiving or beneficiary bank to
> disgorge funds that it knew or should have known were
> obtained illegally when it accepted a wire transfer is not
> inconsistent with the goals or provisions of Article 4A.

*Id*. at 1275.  However, the Sixth Circuit in *Wright* found this and similar cases

involved harm resulting from activity beyond the scope of Article 4A and thus

those cases were inapplicable to the preemptive scope of Article 4A as to wire

transfers.  *See McLaughlin v. Comerica Bank*, 2022 WL 16040109, *6 (E.D. Mich.

Apr. 18, 2022) (citing *Wright*, *supra*).  The question here is whether the claims

arise from a situation addressed in Article 4A and thus, are preempted.  The court

will address each claim in turn based on preemption or whether they otherwise

fail to state a claim.

> 1.     *Negligence (Count II)*

Where the harm alleged is the result of activity governed by Article 4A, that

claim is preempted or displaced by Article 4A.  *See McLaughlin*, at *6.  Title's

negligence claim (Count II) is based on the fact that the wire instructions labeled

Mortgage 1 as the beneficiary of the funds but the funds went into the account of

an individual person, and its assertion that U.S. Bank should have taken steps to

refuse the wire transfer when it determined that the name on the account did not

match the name of the beneficiary.  (ECF No. 9, ¶¶ 68, 70).[1]  Just as in

*McLaughlin*, this common-law claim is based on the wire transfer and seeks to

---

[1] The paragraphs of the amended complaint are misnumbered.  There are two
paragraphs numbered 70.  The court refers to the second paragraph 70 found on PageID.89.

impose liability on U.S. Bank for having processed the wire transfer or having

failed to cancel it.  More specifically, the negligence claim here is based on the

mismatch that is directly addressed in § 440.4707(2)(b) and seeks to impose

obligations on U.S. Bank that exceed or contradict those found in the statute.

"Those matters fall with Article 4A's provisions" and thus the claim is displaced.

*Id*. at *6.  Accordingly, the motion to dismiss the negligence claim is granted

because it is preempted by Article 4A.

### 2.    Breach of Contract (Count III)

Title's breach of contract claim is based on a "Deposit Account Agreement,"

pursuant to which Title says that U.S. Bank "assumed certain contractual duties"

to Title.  (ECF No. 9, Count III, ¶ 88).  Among these duties were U.S. Bank's

obligation to confirm the authenticity and content of Title's payment order by

calling Title and its failure to institute any type of security procedure.  U.S. Bank

contends that this claim must fail because it is preempted and because there was

no contract between the parties.  Title did not provide a copy of the Deposit

Account Agreement, but U.S. Bank provided a copy attached to its response.  (ECF

No. 12-1).[2]  At the hearing, the court asked the parties to provide a copy of the

---

[2] In general, when deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court's review is limited to the four corners of the pleading at issue.  Fed. R. Civ. P 12(d); *see also Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1139 (W.D.

Deposit Account Agreement in effect at the time of the transfer.  Title provided a version dated February 13, 2023 (ECF No. 18) and U.S. Bank provided a version dated November 14, 2022 (ECF No. 19).  The transfer occurred on November 18, 2022 and thus, ECF No. 19 is the operative document.  The Deposit Account Agreement expressly applies to account holders of U.S. Bank and Title does not allege that it is an account holder with U.S. Bank.  *Id*. at PageId.367 ("you" and "yours" defined as "each account owner and anyone else with authority to deposit, withdraw, or exercise control over an account."; "Owner" is defined only as someone "who has the power to deal with an account in his, her or its own name.").  Accordingly, Title does not sufficiently or plausibly allege that it is a party to the Deposit Account Agreement and thus, its breach of contract claim fails.[3]

---

Mich. 2019) (noting that "[i]n general, in deciding a Rule 12(b)(6) motion to dismiss the court is limited to considering only the pleadings") (citing *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011)).  However, where the complaint references a particular agreement, it is "appropriate for the court to look to the document in determining that the document referenced by the complaint contained the necessary elements of a contract between the parties."  *O'Toole v. Lawlogix*, 2017 WL 749194, at *3 (S.D. Ohio Feb. 27, 2017); see also *Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 & n.1 (6th Cir. 2012) (determining that including "copies of the parties' contracts" with the motion to dismiss "did not convert that motion ... because [the plaintiff] expressly referenced those contracts in its complaint" (citation omitted)).

[3] Title does not argue that it is a third-party beneficiary to the Agreement, and any such claim would fail because the Deposit Account Agreement expressly provides that only the Federal Deposit Insurance Corporation has even limited third-party benefits rights.  (ECF No. 19, Page.ID.373).

### 3.    Fraud (Count IV)

U.S. Bank argues that Title has failed to state a claim for fraud under

Michigan law.  To state a claim for fraud, a plaintiff must show:

> (i) that [the] defendant made a material
> misrepresentation; (ii) that it was false; (iii) that when
> [the] defendant made it he knew that it was false, or
> made recklessly, without any knowledge of its truth and
> as a positive assertion; (iv) that [the] defendant made it
> with the intention that it should be acted upon by [the]
> plaintiff; (v) that [the] plaintiff acted in reliance upon it;
> and (vi) that [the] plaintiff thereby suffered injury.

*Noel v. Fleet Fin.*, 971 F. Supp. 1102, 1116 (E.D. Mich. 1997) (alterations in original

and citation omitted).  U.S. Bank argues that the claim fails on the first element

because Title does not allege that U.S. Bank made any statement to it, let alone a

false statement.  U.S. Bank also alleges that the fraud claim is preempted because

by asserting that U.S. Bank ought to have taken steps not required by Article 4A,

plaintiff seeks to sidestep the scheme Article 4A created that does not require

U.S. Bank to take any of the steps plaintiff alleges.  In response, Title does not

address the merits of U.S. Bank's arguments.  Instead, it claims that "it is not the

appropriate time to discuss or rule up on any issues of fact as it relates to what

statements and misrepresentations were made by Defendant."  (ECF No. 13,

PageID.274).

Title's fraud claim must be dismissed for two reasons.  First, it is obligated

at this stage of the proceedings to satisfy Federal Rule of Civil Rule 9(b), which

requires that fraud be pleaded with particularity, and it has not done so given its

failure to provide even the most basic details of the alleged fraudulent

statements.  *See Kaufman Payton & Chapa, P.C. v. Bilanzich*, 2013 WL 5933676, at

*3 (E.D. Mich. Nov. 5, 2013) (Fraud claim dismissed where the plaintiff failed to

factually support his fraud claim as required under Rule 9(b) of the Rules of Civil

Procedure and failed to state a claim under Michigan law for fraud by not alleging

the time, place and content of the misrepresentations, other than conclusory

allegations that the defendant made false and misleading statements.).  Secondly,

Title failed to substantively respond to U.S. Bank's arguments regarding why the

fraud claim must be dismissed and thus, has forfeited this claim.  *Notredan, L.L.C.

v. Old Republic Exchange Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. July 29,

2013) (failure to respond to an argument that a claim is subject to dismissal

"amounts to a forfeiture of [such] claim").  For these reasons, the motion to

dismiss the fraud claim is granted.

    *4.    Conversion (Counts V and VI)*

Title alleges that U.S. Bank converted the funds by its wrongful receipt and

acceptance of the funds, knowing the funds had been stolen, embezzled, or

15

converted by another party based on the mismatch between the account number and the name on the account/beneficiary.  (ECF No. 9, Counts V and VII).  Courts in this district have found that common law and statutory conversion claims are preempted by Article 4A because imposing liability on a receiving bank for declining to agree to cancel a funds transfer is inconsistent with Article 4A.  *See Kirschner v. Wells Fargo Bank*, 2021 WL 5545957, *3 (E.D. Mich. July 19, 2021).  As explained by one court,

> Once a beneficiary bank accepts a payment order, it is obliged to pay the beneficiary. MCL § 440.4904. "After a payment order has been accepted, cancellation, or amendment of the order is not effective unless the receiving bank agrees or a funds-transfer system rule allows cancellation or amendment without agreement of the bank." MCL § 440.4711(3). The receiving bank has the discretion to cancel or amend a payment order after accepting it.

*Shecter Landscaping, Inc. v. JPMorgan Chase Bank NA*, 614 F.Supp.3d 553, 559 (E.D. Mich. 2022).  Accordingly, "[i]mposing liability on a receiving bank for declining to agree to cancel a funds transfer would be inconsistent with Article 4A" and thus, both the common law and statutory conversion claims are preempted by Article 4A.  *Id*. (quoting *Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*, 2018 WL 8334591, at *4 (S.D. Fla. Apr. 4, 2018), aff'd, 795 F. App'x 741 (11th Cir. 2019) (negligence claim preempted by UCC); *see also Grain Traders, Inc. v.*

*Citibank, N.A.*, 160 F.3d 97, 104 (2d Cir. 1998) ("Any common law claim that would impose liability on Citibank for failing to cancel BCN's payment order is precluded as inconsistent with Article 4–A.").  The conversion claims are dismissed.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** Defendant's motion to dismiss the amended complaint in its entirety.

**SO ORDERED**.

Date: August 12, 2024                          s/F. Kay Behm
                                               F. Kay Behm
                                               United States District Judge